Argued at Pendleton October 25, 1943; reargued February 1; reversed March 14, 1944

# WYCKOFF *v.* MUTUAL LIFE INSURANCE CO. OF NEW YORK

(147 P. (2d) 227)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*George Donart,* of Weiser, Idaho (Biggs & Yturri, of Ontario, on the briefs), for appellant.

*Robert S. Miller* and *Borden Wood,* both of Portland (McCamant, King & Wood, of Portland, on the brief), for respondent.

BELT, J.

The beneficiary brought this action to recover under the double indemnity provision of a life insurance policy issued by the defendant company, alleging that the insured came to his death from "bodily injury effected solely through external, violent, and accidental means", to-wit,.by being drowned in the Snake river.

The defendant, in its answer, admitted that the insured was drowned in the Snake river but denied that death was accidental and alleged affirmatively that "insured died by reason of self destruction". The issue was clear cut. Was insured drowned as a result of an accident or was his death suicidal? There was no eye witness to this tragedy. The case was based purely upon circumstantial evidence. The jury, by its verdict, found that the insured had committed suicide and hence no double liability was payable under the policy.

The appeal is based solely upon the refusal of the court to give the following requested instructions:

### 1.

"You are instructed that there is a legal presumption against suicide and when the body of a person is found under circumstances pointing to a sudden death from injury or drowning, such death is presumed to have been caused by accidental means rather than by the intentional act of the person himself."

### 2.

"You are instructed that in an action on an accident policy, if it is shown by the evidence that the death must have been accidental or suicidal, the presumption against suicide can be overcome by circumstantial evidence only if it is of such quality and weight as to negative every reasonable inference of death by accident."

The first requested instruction presents the question as to whether it was reversible error for the court to refuse to tell the jury that there is a legal presumption against suicide. The second request pertains to the quantum of evidence necessary to overcome a presumption against suicide.

■ That there is a presumption of law against suicide is well settled in this jurisdiction and elsewhere: *Fink v. Prudential Insurance Co.*, 162 Or. 37, 90 P. (2d) 762; *Cox v. Royal Tribe*, 42 Or. 365, 71 P. 73, 60 L. R. A. 620, 95 Am. St. Rep. 752. Also see exhaustive note in 103 A. L. R. 185 and Couch's Cyc. of Insurance Law (Vol. 8) § 2230. As said in 29 Am. Jur. 1085:

> "* * * where it is doubtful from the evidence whether death was caused by an accident or by suicide, a presumption arises that an accident, and not suicide, was the cause of death", citing numerous authorities in support of the text.

■ Aside from such common law presumption, it is believed that the disputable statutory presumption (Subd. 1, § 2-407 O. C. L. A.) "That a person is innocent of crime or wrong" is broad and comprehensive enough to include a presumption against suicide. Based upon an identical statute, the Supreme Court of California, in *Wilkinson v. Standard Accident Ins. Co.*, 180 Cal. 252, 180 P. 607, referring to the presumption against suicide, said:

> "This presumption necessarily and logically follows from the statutory presumption 'That a person is innocent of crime or wrong.' " (Code Civ. Proc. § 1963, subd. 1.)

■ It is common knowledge that sane persons do not ordinarily kill themselves. Human experience teaches that there is a strong love of life and fear of death inherent in mankind. It is upon this experienced course of human conduct that the legal presumption against suicide is based. Under the early common law, suicide was punished as a felony. Blackstone describes how the suicide was given an ignominious burial along the highway with a stake driven through his body. We

do not now regard suicide with such severity but, nevertheless, self destruction ordinarily involves moral turpitude and is undoubtedly regarded as being wrong. True, such presumption is not specifically enumerated in the statute as a disputable presumption. Neither is fraud but will it be contended that there is no presumption of law against it? The various disputable statutory presumptions—some of which are much stronger than others—are based upon human experience and have, by legislative enactment, crystallized into rules of law.

Whether a presumption of law has evidentiary value is a question upon which text writers, legal commentators, and professors of the law—to say nothing about judges—have evinced much learning and erudition. The "Battle of Presumptions" commenced when that eminent legal scholar, Professor Thayer, of Yale University, in his "Preliminary Treatise on the Law of Evidence" strongly criticized the United States Supreme Court in *Coffin v. United States*, 156 U. S. 432, 15 S. Ct. 394, 39 L. Ed. 481, for reversing a judgment of conviction because the trial court refused to instruct the jury that a presumption of innocence exists as evidence in favor of a person accused of crime. The court quoted from 1 Greenleaf on Evidence, § 34, that, "This legal presumption of innocence is to be regarded by the jury, in every case, as a matter of evidence to the benefit of which the party is entitled." Then came another eminent scholar, Professor Wigmore, — to whom the torch had been thrown—and he became the leading exponent of the theory that a presumption of law has no evidentiary value and that, after it has carried the case past the court to the jury, the presumption disappears from the case and can not be weighed in the scales with the evidence. According to this

theory, a presumption of law has only procedural consequences and when it has operated as such it is *functus officio*. In other words, when evidence is introduced to rebut the presumption—however weak the evidence may be—the presumption is overcome and destroyed. Some text writers, law professors, and judges who have espoused the Wigmore doctrine have vied with one another in an effort to show how flimsy and unsubstantial a presumption of law really is. This "phantom of the law" has been likened to "bats flitting about in the twilight and then disappearing in the sunshine of actual facts," and to a house of cards that topples over when rebutted by evidence. It remained for Professor Bohlen to head the class when he said a presumption of law was like Maeterlinck's male bee which, after functioning, disappeared.

However, the statute ( § 2-401 O. C. L. A.) in plain and explicit language declares that a presumption is indirect evidence and, under § 2-403 O. C. L. A. defines it as a deduction which the law expressly directs to be made from particular facts. Section 2-405 O. C. L. A. provides that a presumption may be "overcome" by *other evidence,* and § 2-1001 O. C. L. A. provides that the jury "are the judges of the effect or value of evidence * * *" but "that they are not bound to find in conformity with the declarations of any number of witnesses *which do not produce conviction in their minds,* against a less number, or against a presumption or other evidence satisfying their minds." (Italics ours.) It is difficult to understand how a jury could determine whether a presumption has been *overcome by other evidence,* if it was not instructed as to the existence of the presumption. Obviously, the Wigmore doctrine can not be reconciled with the statute.

■ While a presumption in the strict sense of the word is not evidence, it is clear from these statutory provisions, when considered in their entirety, that a presumption has probative or evidentiary value. Under our statute, a presumption stands in lieu of evidence and does not necessarily "disappear" when, as Wigmore says, evidence is offered in opposition thereto. It only "disappears" when the facts upon which it is based have been "overcome" by evidence to the contrary. As said by Mr. Justice Fields in *Lincoln v. French*, 105 U. S. 614, 26 L. Ed. 1189:

"Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts."

It is conceded that evidence may be of such conclusive character that only one reasonable deduction can be drawn therefrom, in which event the presumption would disappear and a verdict be directed, but that is not this case: *Kernin v. City of Coquille*, 143 Or. 127, 21 P. (2d) 1078; *Hancock Land Company v. Portland*, 82 Or. 85, 159 P. 969, 161 P. 250.

When the case, as here, involves a question of fact, who is to say—the judge or the jury—that a presumption has been overcome? Assume that the evidence offered to rebut the presumption is highly improbable and that the jury thinks the witness is unworthy of belief. Is the presumption of law thus destroyed? Has it been "overcome" by evidence which produces conviction in the minds of the jury?

When the legislature in 1862 (§ 2-401 O. C. L. A.) declared that indirect evidence is of two kinds: "Inferences; and (2) Presumption", it was merely expressing the opinion which universally prevailed among lawyers and judges at that time. Indeed, no one as-

serted to the contrary until more than thirty years later Professor Thayer commenced to promulgate his doctrine. It is interesting and rather significant as a historical background of the statute that Mathew P. Deady, who compiled and annotated the General Laws of Oregon 1845-1864, noted in such code that "The rules and principles of the law of evidence as embodied and codified in this and the following two chapters are mainly condensed and extracted from Greenleaf's Treatise on the Law of Evidence * * *"

Honorable LAWRENCE T. HARRIS, who once graced this bench, says in his article entitled, "History of the Oregon Code", 1 Oregon Law Review 184, that "It is therefore accurate to say that all that portion of the code which was enacted in 1864, except minor amendments, was prepared by Mathew P. Deady; and it is also accurate to say, on the evidence already mentioned, that most of the work of preparing the legislation of 1862 was performed by Mathew P. Deady." That the services Deady rendered to this state were satisfactory is evidenced by the fact that, although 80 years have elapsed, no amendments to his code of evidence pertaining to the legal effect of presumptions have ever been made.

True, most courts have, in the main, adopted the Thayer-Wigmore doctrine that a presumption of law has no probative or evidentiary value. There is, however, very respectable authority refusing to follow the majority rule, even when no relevant statute is involved: *Providence Life and Accident Insurance Co. v. Prieto,* 169 Tenn. 124, 83 S. W. (2d) 215; *Mutual Life Ins. Co. v. Maddox,* 221 Ala. 292, 128 So. 383; *New York Life Ins. Co. v. Beason,* 229 Ala. 140, 155 So. 530; *Mitchell v. Industrial Commission of Ohio,* 135 Ohio St.

110, 19 N. E. (2d) 769; *Brown v. Metropolitan Life Ins. Co.* (Iowa), 7 N. W. (2d) 21; *O'Brien v. New England Mutual Life Ins. Co.,* 109 Kan. 138, 197 P. 1100; *Aetna Life Ins. Co. v. Taylor,* 128 Ark. 155, 193 S. W. 540, Ann. Cas. 1918B 1122; *Eckendorff v. Mutual Life Ins. Co.,* 154 La. 183, 97 So. 394; *Arkimo Lumber Co. v. Luckett,* 201 Ark. 189, 143 S. W. (2d) 1102; *Worth v. Worth,* 48 Wyo. 441, 49 P. (2d) 649, 103 A. L. R. 107.

In the Iowa case above cited (decided in 1942), the court said:

"Appellant contends the presumption against suicide does not have the effect of evidence and asks that we over-rule our long line of decisions to the contrary. In Reddick v. Grand Union Tea Co., 230 Iowa 108, 119, 296 N. W. 805, we recently considered our previous holdings and declined to overrule them. In Allison v. Bankers Life Co., 230 Iowa 995, 999, 299 N. W. 891, we again passed upon the proposition and again held the presumption against suicide has the effect of evidence. These holdings reaffirm a rule which has been followed for more than half a century. We are not prepared to recede from it."

Regardless of the conflict of authorities in other jurisdictions, it has been consistently held by this court in decisions extending over a period of fifty years that, under our statute, presumptions of law had evidentiary value: *Peabody v. O. R. & N. Co.,* 21 Or. 121, 26 P. 1053, 12 A. L. R. 823, decided in 1891; *National Bank v. Assurance Co.,* 33 Or. 43, 52 P. 1050; *Cox v. Royal Tribe,* 42 Or. 365, 71 P. 73, 60 L. R. A. 620, 95 Am. St. Rep. 752; *Caraduc v. Schanen-Blair,* 66 Or. 310, 133 P. 636; *Ward v. Queen City Fire Ins. Co.,* 69 Or. 347, 138 P. 1067; *Doherty v. Hazelwood Co.,* 90 Or. 475, 175 P. 849, 177 P. 432; *Hansen v. O. W. R. & N. Co.,* 97 Or. 190, 188 P. 963, 191 P. 655; *Sather v. Giaconi,* 110 Or. 433,

220 P. 740; *City Motor Trucking Co. v. Franklin Fire Insurance Co.*, 116 Or. 102, 239 P. 812; *Clark v. Shea,* 130 Or. 195, 279 P. 539; *Bunnell v. Parelius,* 166 Or. 174, 111 P. (2d) 88.

This is not the first time that this court has been urged to adopt the Wigmore doctrine. In *Ward v. Queen City Fire Ins. Co.*, supra, decided thirty years ago, this court refused to do so, saying:

"* * * whatever may be the rule in some states, or the principle sanctioned by the text-writers, *our code regards a presumption as a species of evidence* by placing presumptions in the class of indirect evidence: Section 93 L. O. L. No sufficient reason is presented to warrant this court in overruling its former pronouncement on the subject under consideration, and for that reason adherence is given to the rule embodying the instructions of the lower court." (Italics ours.)

In *Hansen v. O. W. R. & N. Co.*, supra, decided in 1920, this court again rejected the doctrine and, speaking through Justice HARRIS, said:

"Some text-writers take the view that it is fallacious to attribute to disputable presumptions any artificial probative force after the opponent comes forward with some evidence to contradict the presumption, and that therefore, when the opposite party contradicts a presumption with some evidence, the presumption immediately disappears as a rule of law, and the case goes to the jury free from any artificial rule of law: 4 Wig. on Ev. § 2491; 17 Am. Law Review, 894. Other text-writers and courts maintain that a disputable legal presumption is in the nature of evidence and is to be weighed as such: State v. Kelly, 22 N. D. 5 (132 N. W. 223, Ann. Cas. 1913E, 974); 10 R. C. L. 870, 896; 22 C. J. 82.

"In this jurisdiction the Code makes presumptions a species of evidence; for Section 793, L. O. L.,

declares that indirect evidence is of two kinds: Inferences and presumptions. A presumption, according to Section 995, L. O. L., is a deduction which the law expressly directs to be made from particular facts; Doherty v. Hazelwood Co., 90 Or. 475, 481 (175 Pac. 849, 177 Pac. 432). See, also, Section 868, subd. 2, L. O. L. Instead, then, of laying the presumption out of the case the moment evidence contradicting the presumption is received, the presumption remains in the case to be considered by the *jury as evidence*. As already pointed out, Section 797 does not define the meaning of the term 'overcome'; but other provisions of the Code make the meaning plain.'' (Italics ours.)

But the legal conflict was not ended. The doctrine of Wigmore was again espoused in an able, specially concurring opinion by Justice ROSSMAN in *Bunnell v. Paralius,* supra. The court, however, refused to depart from its long line of decisions holding that presumptions, by virtue of the statute, have evidentiary value.

In California and Montana which have statutory provisions relative to presumptions identical with those of this state, the courts have consistently held that presumptions of law have evidentiary value: *Nichols v. New York Life Ins. Co.,* 88 Mont. 132, 292 P. 253; *Renland v. First National Bank,* 90 Mont. 424, 4 P. (2d) 488; *McMahon v. Cooney,* 95 Mont. 138, 25 P. (2d) 131; *Gagnon v. Jones,* 103 Mont. 365, 62 P. (2d) 683; *Lewis v. New York Life. Ins. Co.,* 113 Mont. 151, 124 P. (2d) 579; *Wilkinson v. Standard Accident Ins. Co.,* (Cal.), supra; *People v. Milner,* 122 Cal. 171, 179, 54 P. 833; *Smellie v. S. P. Co.,* 212 Cal. 540, 299 P. 529; *In re Pitcairn's Estate,* 6 Cal. (2d) 730, 59 P. (2d) 90; *Speck v. Sarver,* 20 Cal. (2d) 585, 128 P. (2d) 16. In

the Milner case, the court thus clearly stated the rule which has long prevailed in this state:

> "Against a proved fact, or a fact admitted, a disputable presumption has no weight; but, where it is undertaken to prove the fact against the presumption, it still remains with the jury to say whether or not the fact has been proven, and, if they are not satisfied with the proof offered in its support, they are at liberty to accept the evidence of the presumption."

■ If it be assumed that there is a legal presumption against suicide and that it has probative value, the next logical inquiry is: What shall the court tell the jury about it? Have the substantive rights of the party who relies upon such presumption been violated by refusal of the court to inform the jury of its existence? Of course, if a presumption of law has no probative value and would not aid the jury in arriving at a verdict in accordance with the law and the evidence, there would be no sense in telling the jury about it. If, however, such presumption does, under our statute, have evidentiary value, the failure to instruct the jury as to its existence would clearly be reversible error. The instruction in question does not ask that the jury be told that a presumption of law is evidence. It merely requests that the jury be advised that there is a legal presumption against suicide, in order that the same may be taken into consideration in arriving at a verdict.

There is a great diversity of opinion among courts in other jurisdictions as to the form and purport of the instructions concerning presumptions. There is the extreme view that the word, "presumption" should never be mentioned in instructions. Other courts take

the more conservative view that it is improper to tell the jury there is a presumption against suicide but that the trial court should direct the attention of the jury to the facts upon which such presumption is based. This method of approach is impracticable in state courts which are not permitted to comment upon the weight of the evidence nor to point out particular evidence from which inferences may or may not be drawn. It is conceded that, under the federal practice it might be more feasible.

Relative to this phase of the case, see the article "What Shall The Trial Judge Tell The Jury About Presumptions?", 13 Wash. L. Rev. 185, by Professor Charles T. McCormick, Professor of Law at Northwestern University School of Law. It reflects common sense and shows a clear understanding of the instruction problem. He says, "the practice of keeping silent about the relevant presumptions in a case where the issues are disputed and must be submitted to the jury runs counter to the traditions of the trial courts in most states." As to the form and purport of the instructions on presumptions, he concludes that "an instruction that the presumption stands until the jury are persuaded to the contrary, has the advantage that it seems to make sense, and so far as we may judge by the other forms thus far invented of instructions on presumptions by that name, I think we can say that it is almost the only one that does." As to the federal practice, referring particularly to the leading case of *Jefferson Standard Life Ins. Co. v. Clemmer,* 79 F. (2d) 724, 103 A. L. R. 171, Professor McCormick calls attention to the fact that, in the federal court, the judge is free to follow the common law tradition of explaining the allowable inferences from the particular circumstantial evidence.

Assume that A dies with the promissory note of B in his possession. The executor of A's estate brings an action on the note. The note is admitted in evidence. It is presumed to have been executed for a consideration (Subd. 21 § 2-407 O. C. L. A.). A *prima facie* case has thus been made, but B testified that the note was given without consideration. A's lips are sealed in death. It is clear what would happen to plaintiff's case if the court refused to instruct the jury as to the disputable statutory presumption above mentioned. There are numerous other cases where, to prevent a miscarriage of justice, it is absolutely necessary for the jury to be apprised of the existence of a legal presumption.

*New York Life Ins. Co. v. Gamer,* 303 U. S. 161, 58 S. Ct. 500, 82 L. Ed. 726, 114 A. L. R. 1218, involved an insurance policy providing for double indemnity in case of death other than by self destruction, effected solely through external, violent, and accidental means. Action was commenced in the state court of Montana but, on account of diversity of citizenship, was removed to the federal court for the district of Montana. When the cause reached the United States Supreme Court it was held reversible error to instruct the jury that there was a presumption of law that death was not voluntary and that defendant must overcome such presumption by a preponderance of the evidence. The decision of the United States Supreme Court adopting the Wigmore theory may be persuasive but it is certainly not controlling. The Montana Supreme Court in *Lewis v. New York Life Ins. Co.,* supra, decided in 1942, definitely refused to follow the rule announced in the Gamer case, as it was incompatible with the statutory pro-

visions of that state relative to the legal effect of disputable presumptions. The court said:

"Defendant urges us to adopt the view announced in the Gamer case to the effect 'The presumption is not evidence and may not be given weight as evidence.' This court has repeatedly and without exception held otherwise under sections 10600 and 10604, Revised Codes. It perhaps is not correct to speak of a presumption as evidence in spite of the provisions of section 10600 which class presumptions as indirect evidence, in view of section 10602 which directly defines a presumption as a deduction which the law expressly directs to be made from particular facts. Yet that does not require any change in the rule long adhered to by this court that the presumption stands in the face of positive evidence to the contrary except in certain circumstances such as are found in Re Wray's Estate, supra, and Nichols v. New York Life Ins. Co., supra, and must be given weight in determining the fact question. Section 10604 provides that the presumption may be controverted by other evidence. If the presumption disappeared once evidence to the contrary appeared, there would be nothing for that evidence to controvert. Section 10604 clearly means that when positive evidence appears it stands on one side and the presumption on the other, and the trier of fact must weigh them both in determining the question. This court has adhered to this view throughout its history. The rule that the presumption stands even though controverted is not necessarily based on a theory that it is evidence itself, but upon the statutes. The legislature may define the effect of the presumption as it has and even though, strictly speaking, it is not itself evidence, there is no reason why the legislature cannot require that a proven fact out of which the presumption arises be given certain probative value which has the effect of evidence. * * *", citing numerous authorities in support thereof.

*Cox v. Royal Tribe,* supra, is squarely in point. Referring to the instructions given relative to the presumption against suicide, the court said:

"But the more serious objection seems to be that the court should not have instructed at all as to the presumption of death from natural causes, affirming that there was sufficient testimony otherwise bearing on the issue from which the jury should have made up their verdict; and citing Sackberger v. National Grand Lodge, 73 Mo. App. 38. In the case at bar the evidence is not such as to explain or to indicate with such probability how the body of the deceased came to be in the water as found as to render the presumption unavailable in determining the cause of death. She was found in the water, but no one saw her go in, and how she came to be there—whether of her own accord or by another cause—no one can positively say from the testimony; *hence the presumption becomes a pertinent factor in determining the cause,* and, we think, was properly submitted to the jury in aid of their deliberations." (Italics ours.)

The above case involved an ordinary life insurance policy and the burden of proof was, by reason thereof, on the defendant company to establish suicide. In the instant case, however—the action being to recover upon a double indemnity clause of the policy—the burden of proof was on the plaintiff beneficiary and the trial court so instructed. The difference in the two cases relative to the burden of proof, however, does not affect the Cox case as an authority on the question under consideration.

No instruction was requested that a presumption against suicide was evidence. The plaintiff, however, was entitled as a matter of substantive right to have the court instruct the jury as to the existence of such

presumption. The refusal of this request was reversible error. See *Worth v. Worth,* supra, and cases cited therein.

■■ No error was committed in refusing to give the second requested instruction relative to the *quantum* of evidence necessary to overcome the presumption in question, as such might tend towards confusion in cases like this where the burden of proof rests upon the plaintiff beneficiary. In my opinion, it would be proper for the court to instruct the jury in plain, simple language, in keeping with the statute, that this disputable presumption could be overcome by evidence satisfying their minds to the contrary; that, if the disputable presumption was not thus overcome, the jury should find in accordance therewith, viz., that the insured drowned as the result of an accident.

■ The constitutionality of statutory provisions relative to disputable presumptions having the effect of evidence is well settled. In 20 Am. Jur. 40, Evidence § 9, it is said:

> "Statutes declaring certain facts to be prima facie or presumptive evidence of other facts do not, *where there is some rational connection between the facts proved and the ultimate facts presumed,* deny equal protection of the laws or violate constitutional guaranties of due process of law", citing numerous authorities in support of the text. (Italics ours.)

In 12 Am. Jur. 316, Constitutional Law, § 624, it is stated:

> "A certain fact or facts may be made prima facie evidence of other facts if there is a rational connection between what is proof and what is to be inferred and if the rule is not arbitrary."

See *Smellie v. S. P. Co.* (Cal.) supra, sustaining the constitutionality of the statute of that state—the same as ours—relative to the legal effect of presumptions. The case of *Western & Atlantic Railroad v. Henderson,* 279 U. S. 639, 73 L. Ed. 884, 49 S. Ct. 445, is considered and distinguished. Also *Lewis v. New York Life Ins. Co.* (Mont.), supra.

The judgment is reversed and the cause remanded for a new trial.

BAILEY, Chief Justice, and KELLY and LUSK, Justices, concur.

---

BRAND, J. (Dissenting).

The plaintiff as named beneficiary in a policy of life insurance brings this action against the defendant company to recover under a double indemnity provision for the alleged accidental death of the insured. There was a verdict and judgment for the defendant company, and the plaintiff appeals.

By the terms of the policy the defendant company agreed that in the event of the death of the insured from natural causes it would pay to the plaintiff beneficiary the sum of $5000. It was further agreed that double indemnity, to-wit, $10,000, would be payable

"  * * * upon receipt of due proof that the insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes * * *."

Upon the death of the insured and upon proofs being made, the defendant paid the plaintiff the sum of $5000 with certain interest and additional benefits,

but it refused to pay under the double indemnity clause of the policy. In her action on the policy the plaintiff alleged that her husband, the insured, came to his death from bodily injury effected solely through external, violent and accidental means. She expressly remitted all of her claim in excess of $3000 and seeks judgment under the double indemnity provision for that amount.

By its answer, the defendant company alleged that the insured committed suicide, and the jury so found. The only assignments of error which are presented on this appeal relate to the refusal of the court to give certain instructions requested by the plaintiff. Those requests were as follows:

"You are instructed that there is a legal presumption against suicide and when the body of a person is found under circumstances pointing to a sudden death from injury or drowning, such death is presumed to have been caused by accidental means rather than by the intentional act of the person himself."

"You are instructed that in an action on an accident policy, if it is shown by the evidence that the death must have been accidental or suicidal, the presumption against suicide can be overcome by circumstantial evidence only if it is of such quality and weight as to negative every reasonable inference of death by accident."

Under these circumstances it is unnecessary to make any detailed review of the evidence concerning the circumstances surrounding the death of the insured. He disappeared on the evening of January 2nd, 1941, and his body was found on March 28th, 1941, floating on the Snake River, near Copperfield in Baker County, Oregon, some seventy miles distant. The evidence con-

cerning the cause of his death, whether by accident or by suicide was all circumstantial, and from it inferences might be drawn by the jury in favor of either accidental or suicidal death. The plaintiff makes no claim that she was entitled to a directed verdict, and the only questions submitted to us on this appeal are whether or not the court committed prejudicial error in refusing to give the requested instructions set forth above.

In view of the nature of the testimony it was proper to submit the case to the jury regardless of our conclusion as to the effect of the alleged presumption. The burden of proof was on the plaintiff to establish that the death of the insured was caused through external, violent and accidental means. *Watkins v. Prudential Insurance Company,* 315 Pa. 497, 173 A. 644 (1934), 95 A. L. R. 869; *Metropolitan Life Insurance Co. v. Rosier,* 189 Okl. 448, 117 P. (2d) 793 (1941); *Laventhal v. New York Life Insurance Co.* 40 F. Supp. 157 (1941); *Lambert v. Metropolitan Life Insurance Co.,* 123 W. Va. 547, 17 S. E. (2d) 628 (1941); *Brunswick v. Standard Accident Insurance Co.,* 278 Mo. 154, 213 S. W. 45, 7 A. L. R. 1213 (1919); *New York Life Insurance Company v. Ross,* 30 F. (2d) 80 (1928); *Wojcik v. Metropolitan Life Insurance Co.,* 124 Conn. 532, 1 A. (2d) 131 (1938); *Postler v. Traveler's Insurance Co.,* 173 Cal. 1, 158 P. 1022 (1916); *Landau v. Pacific Mutual Life Insurance Co.,* 305 Mo. 542, 267 S. W. 370 (1924); *Warbende v. Prudential Insurance Co. of America,* 97 F. (2d) 749, 117 A. L. R. 760 (1938).

The rule imposing upon the plaintiff the burden of proof in actions on accident policies containing such provisions as those found in the case at bar must

not be confused with the rule imposing the burden of proof of suicide on the insurer in actions brought on ordinary life policies, as in *Hildebrand v. United Artisans*, 50 Or. 159, 91 P. 542 (1907) and *Cox v. Royal Tribe*, 42 Or. 365, 71 P. 73, 60 L. R. A. 620, 95 Am. St. Rep. 752 (1903). The effect of an inference or presumption coming to the aid of one having the burden of proof may require that the opponent go forward with the evidence or risk or suffer defeat, but the general burden of proof, the risk of non-persuasion, remains unchanged. *Judson v. Bee Hive Auto Service Co.*, 136 Or. 1, 294 P. 588, 297 P. 1050, 74 A. L. R. 944 (1931); *Hansen v. Oregon-Washington Railroad & Navigation Co.*, 97 Or. 190, 188 P. 963, 191 P. 655 (1920); 9 Wigmore on Evidence (3d Ed.) § 2489, p. 285. Therefore, it was not affected by the allegations of suicide, affirmative in form, contained in the answer. The situs of the burden of proof will be found to have an important bearing upon our consideration of the effect of presumptions.

In the discussion which follows, the party having the burden of proof upon an issue will be referred to as the proponent, whether he be plaintiff or defendant, and the party not having the burden of proof (the risk of non-persuasion) will be called the opponent.

In accord with authorities hereafter cited, we hold that there is a presumption of law against suicide which arises upon mere proof of death by violent and external means, but in order to determine whether the court erred in refusing to instruct upon that presumption it is necessary to consider the nature and function of inferences and presumptions in view of the common law and the provisions of the Oregon statutes.

In approaching the problem, we echo what has been repeatedly said by other courts.

"An examination of many cases concerning presumptions, particularly 'presumptions against suicide,' reveals what has been aptly characterized as 'a welter of loose language and discordant decisions concerning presumptions.'" *Watkins v. Prudential Insurance Co.,* (supra) 173 A. at p. 649.

At the outset, we are confronted by the preponderant weight of reason and authority outside of Oregon which supports what we shall call the "majority doctrine" concerning the nature of presumptions of law as distinguished from presumptions of fact (inferences). The doctrine is stated by Wigmore as follows:

"The distinction between presumptions 'of law' and presumptions 'of fact' is in truth the difference between things that are in reality presumptions (in the sense explained above) and things that are not presumptions at all. A presumption, as already noticed, is in its characteristic feature a rule of law laid down by the judge, and attaching to one evidentiary fact certain consequences as to the duty of production of other evidence by the opponent. It is based, in policy, upon the probative strength, as a matter of reasoning and inference, of the evidentiary fact; but the presumption is not the fact itself, nor the inference itself, but the legal consequence attached to it. *But, the legal consequence being removed, the inference, as a matter of reasoning, may still remain;* and a 'presumption of fact,' in the usual sense, is merely an improper term for the rational potency, or probative value, of the evidentiary fact, regarded as not having this necessary legal consequence. 'They are, in truth, but mere arguments,' and 'depend upon their own natural force and efficacy in generating belief or conviction in the mind.' *They have no significance so far as affects the duty of one or the other party*

*to produce evidence, because there is no rule of law attached to them, and the jury may give to them whatever force or weight it thinks best,—just as it may to other evidence."* \* \* \*

"Nevertheless, it must be kept in mind that the peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary from the opponent.* If the opponent does offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule." (Italics ours.) 9 Wigmore on Evidence (3d Ed.) § 2491, pp. 288, 289.

The doctrine that presumptions of law as such are not to be given probative forces as evidence is described by the annotator in 95 A. L. R. at p. 880, as "the rule which is approved by most text writers and the majority of courts which have discussed the subject." Supporting decisions in great number are cited from United States, Alabama, Arkansas, Connecticut, Illinois, Indiana, Iowa, Missouri, Nebraska, New Hampshire, New Jersey, Oklahoma, Pennsylvania, Rhode Island, South Dakota, Texas, Utah, Washington, Vermont and Wisconsin. For recent supporting cases see *Seiler v. Whiting,* 52 Ariz. 542, 84 P. (2d) 452 (1938); *St. Louis-San Francisco Ry. Co. v. Mangum,* 199 Ark. 767, 136 S. W. (2d) 158 (1940); *Hobert-Farrell Plumbing & Heating Co. v. Klayman,* 302 Mass. 508, 19 N. E. (2d) 805 (1939) (involving presumption of receipt of letter properly mailed); *Hollen v. Reynolds,* 123 W. Va. 360, 15 S. E. (2d) 163 (1941); *People v. Kayne,* 286 Mich. 571, 282 N. W. 248 (1938): *Quick v. State,* 191 Miss. 179, 2 So. (2d) 812 (1941); *Clary v. Lindley,* 30 Cal. App. (2d) 571, 86 P. (2d) 920 (1939) (but see later

reference to the California rule); *Langlitz v. American Nat. Insurance Co.* (Tex.) 146 S. W. (2d) 484 (1940).

The Supreme Court of Vermont recently examined the entire question, overruled a long line of decisions which had held that presumptions as such constitute evidence and adopted the majority rule. We quote:

"Upon a careful consideration of the whole subject, and with a keen appreciation of the widespread effect it will have upon our jurisprudence, but with a firm conviction that a false doctrine has dominated the subject and persisted in our law too long already, we have now reached the following conclusion:

"A disputable presumption is a rule of law to be laid down by the court, which shifts to the party against whom it operates the burden of evidence, merely. It points out the party on whom lies the duty of going forward with evidence on the fact presumed. And when that party has produced evidence fairly and reasonably tending to show that the real fact is not as presumed, the office of the presumption is performed, and the fact in question is to be established by evidence as are other questions of fact, without aid from the presumption, which has become functus officio." *Tyrrell v. Prudential Insurance Co. of America,* 109 Vt. 6, 192 A. 184, 115 A. L. R. 392 at p. 403 (1937).

The majority doctrine has been applied with especial force in cases involving the asserted presumption against suicide, especially in cases in which the presumption was invoked by a party having the burden of proving accidental death. *Jahn v. Commercial Travelers Mutual Accident Association of America,* 256 App. Div. 835, 9 N. Y. S. (2d) 257 (1939); *Honrath v. New York Life Insurance Co.,* 65 S. D. 480,

275 N. W. 258, 112 A. L. R. 1272 (1937); *Jefferson Standard Life Insurance Co. v. Clemmer,* 79 F. (2d) 724, 103 A. L. R. 171 (1935); *Del Vecchio v. Bowers,* 296 U. S. 280, 56 S. C. 190, 80 L. Ed. 229; *Watkins v. Prudential Insurance Co.* (supra); *Lambert v. Metropolitan Insurance Co.* (supra); *Reliance Life Insurance Co. v. Burgess,* 112 F. (2d) 234 (1940) (citing many cases); *New York Life Insurance Co. v. Ross* (supra); *Modern Woodmen of America v. Craiger,* 175 Ind. 30, 92 N. E. 113 (1910); 103 A. L. R. 185, annotation; *Warren v. Pilot Life Insurance Co.,* 217 N. C. 705, 9 S. E. (2d) 479 (1940); *New York Life Insurance Co. v. Gamer,* 303 U. S. 161, 58 S. C. 500, 82 L. Ed. 726, 114 A. L. R. 1218 (1938). Commenting upon this case it is said:

"The effect of the decision in New York L. Ins. Co. v. Gamer (U. S.) (reported herewith) ante, 1218, is to place this court in accord with what is now the conventional view, that a presumption is not evidence and may not be given weight as such although the jury may, without giving them any artificial weight as a presumption, draw the natural and logical inferences from the facts which are the basis of the presumption." Note of annotator in 114 A. L. R. 1226.

Under the "majority doctrine" it would be unnecessary to instruct the jury concerning a presumption against suicide. The force of the procedural rule of law having spent itself when the case has gone to the jury, "the inference as a matter of reasoning may still remain," but as to such inferences "the jury may give to them whatever force or weight it thinks proper just as it may to other evidence." Wigmore on Evidence (supra).

As opposed to the majority doctrine, the minority rule asserts that a presumption of law is evidence,

and in its extreme form it holds that a presumption of law, as law, must be given independent probative force of an evidentiary nature and treated as a make-weight in addition to and independent of the testimony and of the inferences of fact to be drawn therefrom. If a rule of law as such is to be given evidentiary weight, we suppose the jury should be so advised. The minority view finds support in cases from Illinois, Massachusetts, Montana, and perhaps Iowa and Indiana. *Johnson v. Johnson,* 187 Ill. 86, 58 N. E. 237 (1900) ; *Graves v. Colwell,* 90 Ill. 612 (1878) ; *Clifford v. Taylor,* 204 Mass. 358, 90 N. E. 862 (1910) ; but see *Hobart-Farrell Plumbing & Heating Company v. Klayman,* 302 Mass. 508, 19 N. E. (2d) 805 (1939) ; *In re Cowdry's Will,* 77 Vt. 359, 60 A. 141, 3 Ann. Cas. 70 (1904) ; *Hockstedler v. Dubuque and Sioux City Railway Co.,* 88 Iowa 236, 55 N. W. 74 (1893) ; *Cleveland, Cincinnati, Chicago & St. Louis Railway Co. v. Hadley,* 170 Ind. 204, 82 N. E. 1025, 84 N. E. 13, 16 L. R. A. (N. S.) 527, 16 Ann. Cas. 1 (1907). But see contra: *Kilgore v. Gannon,* 185 Ind. 682, 114 N. E. 446 L. R. A. 1917E, 530 (1916). The decisions in California to the effect that presumptions of law are evidence rest upon statutes identical to ours which will be later considered.

The majority doctrine has exerted a powerful influence on this court which has on more than one occasion paid tribute to its apparent soundness, while expressing the opinion that we are committed to the contrary view by statute and *stare decisis. Ward v. Queen City Insurance Co.,* 69 Or. 347 at p. 355, 138 P. 1067 (1914), and see the concurring opinion of Mr. Justice Lusk in *Bunnell v. Parelius,* 166 Or. 174, at p. 183, 184, 111 P. (2d) 88 (1941). The provisions of our statute have been thought to constitute an ultimate bar to the

adoption of the majority view, and it is, of course, clear that the legislative mandate must be given effect by this court. What that effect may be remains for our determination.

The Oregon statutes concerning presumptions were enacted in 1862 before the Wigmore doctrine had been formulated. They were adopted verbatim by California in 1872 and by Montana in 1895. Our attention has not been called to similar provisions in any other state. The Oregon statutes provide that:

"Indirect evidence is of two kinds:
"(1) Inferences; and
"(2) Presumption." O. C. L. A. 2-401.

"An inference is a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect." O. C. L. A. 2-402.

"A presumption is a deduction which the law expressly directs to be made from particular facts." O. C. L. A. 2-403.

"An inference must be founded:

"(1) On a fact legally proved; and,

"(2) On such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business or the course of nature." O. C. L. A. 2-404.

"A presumption, unless declared by law to be conclusive, may be overcome by other evidence, direct or indirect; but unless so overcome, the jury are bound to find according to the presumption." O. C. L. A. 2-405.

"All other presumptions are satisfactory, unless overcome. They are denominated disputable presumptions, and may be controverted by other evi-

dence. The following are of that kind:   *   *   *." O. C. L. A. 2-407.

The conflicting influence of the majority rule on the one hand, and of the Oregon statutes on the other, has resulted in a devastating confusion, as will appear from the following citations, which present concretely the nature and difficulty of the problem which now confronts us.

The following cases strongly reflect the influence of the "majority rule" at least to the extent that a presumption of law, as such, should not be given evidentiary weight by the trier of the fact when substantial evidence has been presented supporting the contentions of both parties. Speaking of the inference or presumption of agency from proof of ownership by the defendant of a car negligently driven by another, the court said:

> "The presumption of employment recognized in Doherty v. Hazelwood Co., 90 Or. 482 (175 Pac. 849, 177 Pac. 432), has no proper place in this case; a presumption 'may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts.' " *Nash v. Baun,* 124 Or. 485, at p. 493, 264 P. 846 (1928).

To the same effect see *Kernin v. City of Coquille,* 143 Or. 127 at p. 140, 21 P. (2d) 1078 (1933). In *Hancock Land Co. v. City of Portland,* 82 Or. 85, 159 P. 969 (1916), the issue was whether certain required notices had been posted. The defendant contended that the city was entitled to rely upon the statutory presumption that official duty had been performed. The court said:

> "Rule 119 of Lawson's Law of Presumptive Evidence is as follows:

" 'A presumption cannot contradict facts or overcome facts proved.'

"A text-writer in discussing this subject observes:

" 'There is some confusion in the cases upon the question whether a presumption is evidence and has probative force. Since the function of a presumption logically considered is merely to impose the burden of going forward with the evidence upon the party against whom it operates, when contrary evidence is adduced the presumption disappears, although the facts upon which it rested still remain as evidence in the case': 9 Ency. Ev. 885.

"In the absence of any other proof, a presumption is usually indulged as substantive evidence to substantiate or refute a material fact."

"The presumption can be relied upon 'until the contrary is shown': Section 404, City Charter. The contrary having been established as thus stated, no foundation remained upon which to predicate the presumption." *Hancock Land Co. v. City of Portland,* (supra) 82 Or. at p. 89 and 90.

In *French v. State Industrial Accident Commission,* 156 Or. 443, 68 P. (2d) 466 (1937), the plaintiff had the burden of proving that she had entered into a common law marriage with the deceased in Idaho. There was evidence that she and the deceased had lived in that state as husband and wife. The jury found that they had not been married, and she appealed on the ground that the trial court had erred in failing to instruct in accordance with the statutory presumption, O. C. L. A. 2-407 (30), that a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage. The court said:

"Presumptions operate when the preliminary facts demanded by them have been established, and when the party to be favored has not himself negatived the fact which he asks judge and jury to pre-

sume. When the fact otherwise presumable is negatived by proof, free from question and contradiction, no room remains for a favorable presumption, *and neither court nor jury are at liberty to engage in one*: * * *." (Citing many cases.)

"We realize that in the decisions just reviewed, with the exception of the last, the matter before the court was the propriety of engaging in an inference, or in what is sometimes called a presumption of fact; *but we believe that the reasons mentioned in those authorities are equally applicable to a presumption of law.*"

"Justice cannot be facilitated by giving one side of an issue the benefit of a make-weight and by placing a handicap upon the other side." (Italics ours.) *French v. State Industrial Accident Commission* (supra) 156 Or. at pp. 455, 456.

In *Consor v. Andrew,* 61 Or. 483, at p. 491, 123 P. 46 (1912), the court quoted with approval:

"Presumptions served a most useful and indispensable part in the correct decision of many questions but they are out of place when the facts are known or are admitted."

See also *McDowell v. Hurner,* 142 Or. 611, 13 P. (2d) 600, 20 P. (2d) 395, 88 A. L. R. 578 (1932), (set aside on rehearing); *Holland v. Hartwig,* 145 Or. 6, at p. 14, 24 P. (2d) 1023 (1933); *Bunnell v. Parelius* (supra) 166 Or. at p. 180. The so-called majority rule is fully set forth in the concurring opinion of Mr. Justice ROSSMAN in the case of *Bunnell v. Parelius* (supra) 166 Or. at pp. 188, 189, from which we quote a portion:

"But a presumption is only an expedient. It, therefore, vanishes when it has served its purpose. It is like a chrysalis which takes wings and is gone. Its purpose while it exists is to coerce the adversary to submit proof. When it has performed its full coercive mission it has become functus officio, and

then the existence or the nonexistence of the questioned fact is ascertained by ransacking through the evidence.''

On the other hand, based on the statute, this court has repeatedly laid down the rule that both inferences and presumptions are evidence. *Doherty v. Hazelwood*, 90 Or. 475, 175 P. 849, 177 P. 432 (1919); *Ward v. Queen City Insurance Co.* (supra); *Cox v. Royal Tribe*, 42 Or. 365, at p. 374, 71 P. 73, 60 L. R. A. 620, 95 Am. St. Rep. 752 (1903); *Caraduc v. Schanen-Blair Co.*, 66 Or. 310, 133 P. 636 (1913); *Sather v. Giaconi*, 110 Or. 433 at p. 440, 220 P. 740 (1923); *City Motor Trucking Co. v. Franklin Fire Insurance Co.*, 116 Or. 102 at p. 107, 239 P. 812 (1925); *Clark v. Shea*, 130 Or. 195, at p. 205, 279 P. 539 (1929); and see concurring opinion of Mr. Justice Lusk, in *Bunnell v. Parelius* (supra).

In view of this summary, it is not too much to say that the discordant judicial voices should, if possible, be harmonized, or, if impossible, that some of them should, except as dissents, be stilled. It is our belief that the decisions can in large measure be harmonized and that the difference between the majority view outside of Oregon and the statutory rule in Oregon is chiefly one of terminology.

In the discussion which immediately follows, we shall confine ourselves to that type of presumption of law defined in the statute, namely, a deduction which the law expressly directs to be made from *particular facts*. O. C. L. A. 2-403. It arises only when *particular facts* have been shown in evidence and when from those particular facts the law directs a deduction to be made. Most, but not all, of the statutory disputable presumptions are of this kind.

The difference between the majority rule outside of Oregon and the statutory rule here is found in the respective definitions of a presumption. To Professor Wigmore and in the majority of jurisdictions, a presumption of law is defined as a rule of law having only procedural consequences. If a presumption of law is thus defined, it logically follows that when the procedural consequences have occurred the presumption is *functus officio*, and the authorities very properly have held that the presumption or rule of law cannot have weight as evidence.

We find an illuminating article by McBain of the California School of Jurisprudence, which contains penetrating comments on the Oregon and California statutory rule. (*Smellie v. Southern Pacific Co.*, 212 Cal. 540, 299 P. 529 (1931)) to the effect that a presumption of law is evidenced. He is, of course, discussing presumptions of law as defined by Wigmore. The author speaks first of a case in which a presumption was employed defensively. The issue was insanity in a criminal case, the burden of proof of insanity being on the defendant. *People v. Chamberlain*, 7 Cal. (2d) 257, 60 P. (2d) 299 (1936).

> "A jury empaneled to determine insanity may weigh the testimony of witnesses and other evidence and if the testimony of the witnesses and other evidence does not convince them of defendant's 'defense' of insanity, they may reject the defense. They can rationally do this and only this. They cannot rationally weigh a rule of law against the testimony of witnesses. To tell a jury to weigh a rule of law is to command them to do the impossible—to employ sophistry of the rankest kind. * * * In what terms, it may be asked, would a trial judge frame an instruction for the guidance

of a jury, that a presumption is evidence that may be weighed by them with or against all the evidence in the case?'' 26 Cal. Law Rev. p. 544.

Concerning cases like the one at bar in which a presumption is invoked by the proponent, he says:

"The burden of proof may be placed upon a litigant to establish a fact. He may be aided by a presumption that the fact exists. If then he is further aided by a judicial fiat that it is probably true that the fact exists (regard a presumption as the equivalent of evidence) we have given to him an unfair advantage and started the law suit with contradictory positions. It is unfair to one of the litigants to say to him that 'your opponent has the burden of proving that the fact he asserts is true but we declare to you at the outset that what he asserts to be true is probably true.' "

Under the majority doctrine, to instruct the jury that there is a presumption of law of the type now under discussion would be unnecessary, and to advise them that such a presumption is evidence would be improper.

But we have yet to consider another aspect of the doctrine as expounded by Wigmore and the majority rulings. Although they define a presumption as merely a rule of law and therefore not evidence, they fully recognize that the identical particular facts proved which give rise to the presumption (the rule of law) may and generally do also create an inference of genuine probative force. There is nothing in the majority rule which denies to such inferences of fact the probative or evidentiary weight to which they may be entitled at the hands of the court or jury. The narrow scope of the definition of a presumption and also the complete

recognition of the probative force of inferences which arise from the very facts which produce the presumption is made clear in the following passage from Wigmore:

"So long as the law attaches no legal consequences in the way of a duty upon the opponent to come forward with contrary evidence, there is no propriety in applying the term 'presumption' to such facts, *however great their probative significance*" 9 Wigmore on Evidence (3d Ed.) § 2491, p. 288.

In *New York Life Insurance Company v. Ross,* 30 F. (2d) 80, at p. 82 (1928), the court well stated the majority doctrine.

"This presumption, as such, would not survive the introduction of evidence tending to prove suicide or even motive for suicide. Thereafter it would have no place in the reasoning as a presumption (Brunswick v. Standard Accident Ins. Co., 278 Mo. 154, 173, 213 S. W. 45, 7 A. L. R. 1213; Von Crome v. Travelers Ins. Co. (C. C. A.) 11 F. (2d) 350); but, as a legitimate inference from human life, the effect would continue. This inference is sometimes loosely denominated a presumption. In nature it is as truly evidentiary as the true presumption is procedural. In practical application of these rules, and for the proper understanding of the jury, it would seem merely a question of words—a method of phrasing the established rule—whether the court charges the jury that the presumption continues after evidence to rebut it has been introduced, but is rebuttable, or whether the jury be charged that the presumption is destroyed but a natural and legitimate inference arises from the evidence, or lack of evidence, to be given such probative effect as the jury deems proper in determining the issue."

The case of *Wojcik v. Metropolitan Life Insurance Co.* (supra) involved the presumption against suicide. The court said:

"The basis of any such presumption must be 'the common knowledge, which may be noticed without proof by a judge and jury, that sane persons do not ordinarily kill themselves.'" (Citing cases.)

"Whatever may be the holdings elsewhere, this fact would bring such a presumption within the category of those which under our law exhaust themselves as presumptions when substantial countervailing evidence is produced upon the trial, *leaving merely the circumstances which give rise to the presumption to be considered with the other evidence in the case as a basis for any proper inferences.*" (Citing cases.) (Italics ours.)

In *O'Dea v. Amodeo,* 118 Conn. 58, 170 A. 486, at p. 487, (1934), the court said:

"It is also true that when the presumption rests upon common experience and inherent probability, it exhausts itself when the defendant produces substantial countervailing evidence. Clark v. Diefendorf, 109 Conn. 507, 510, 147 A. 33. Such presumptions differ, however, from those of which we have been speaking, in that as they are based upon the fact that common experience and reason justify the drawing of a certain inference from the circumstances of a given situation, it follows that, *although the presumption as such disappears from the case when substantial countervailing evidence is produced, the facts and circumstances which give rise to it remain and afford the basis for a like inference by the trier, whether court or jury.*" (Italics ours.)

In *Jefferson Standard Life Insurance Co. v. Clemmer,* 79 F. (2d) 724, at p. 730, 103 A. L. R. 171 (1935), the court said:

"When the case goes to the jury, they are at liberty to take into consideration the abnormality

of suicide and to give such probative force, as their judgment dictates, to the fact upon which the presumption is based, that is, in a case of this sort, to the fact of death by violence; but 'it is not weighed down by any artificial additional probative effect; they may estimate it for just such intrinsic effect as it seems to have under all the circumstances." (Citing cases.)

And see *Beggs v. Metropolitan Life Insurance Co.*, 219 Iowa 24, 257 N. W. 445, 95 A. L. R. 863 (1934).

The majority rule is well summarized by the annotator in 95 A. L. R. at p. 879, who says:

"The question is not whether the facts or actual evidence from which the presumption arises may be considered, it being well settled that such facts may be considered as evidence, but whether the artificial effect given to them by the rule of law, i. e., the presumption, may be given probative effect by the jury."

Thus, we see that as to presumptions of law which are deductions from facts proved, the majority rule recognizes that there are two separate and distinct consequences from the introduction in evidence of "particular facts": first, a rule of law having procedural consequences requiring the opponent to go forward with the evidence and, second, inferences of fact or deductions from the particular facts proved which are truly evidentiary, but by this view only the rule of law is described as a presumption, and so by definition a presumption is not evidence.

This brings us to a further consideration of the Oregon statutes. Wisely or otherwise they have adopted a different and far more comprehensive definition of a presumption, and within that definition they have

included both of the legal consequences which may arise from the proof of "particular facts", i. e., the procedural rule and also the inference of fact which may logically be drawn from the particular facts proved. Under the Oregon statutes above quoted, a presumption is a deduction from particular facts. A deduction is another word for an inference. So the statutory definition of a presumption manifests the intent to include the logical inference or deduction as part of the presumption. An inference must be founded (1) upon a fact legally proved and (2) on such deduction from that fact as is warranted.

The distinction between the two views concerning presumptions is clinched by our statute which includes presumptions and inferences within the term "indirect evidence", whereas the majority view treats inferences as arguments or conclusions from particular facts proved. If a presumption includes a deduction or inference, and if an inference is evidence by statutory definition, then, of course, a presumption of law at least includes evidentiary matter. Take the alleged presumption of law against suicide. First, we seek the "particular facts" proved. They are that the deceased died by violent and external means. We then assume that from such proof a presumption of law arises against suicide. This requires the court to rule that a *prima facie* case of accidental death has been made, consequently to deny a nonsuit and to require that the defendant go forward with the evidence or lose the case. Thus far the result is the same if we apply the majority definition of a presumption or the Oregon statutory definition. Beyond this point, the two views lead by different roads to the same result. Under the majority rule the pre-

sumption of law is *functus officio,* but there remains in evidence the fact of violent death and a consideration of the usual propensities of men. The fact is evidence, and the inference from the fact, namely, the love of life and the unlikelihood of suicide, remains for the consideration of the jury. Under Oregon statutes the fact of death by violent and external means is evidence, and the inference or argument based on the usual propensities of men is also available for consideration by the jury as tending to show the improbability of suicide, but under the Oregon statute this inference or argument is treated as included within the meaning of the word "presumption." There is no necessity for saying that the procedural rule of law which is part of our definition of presumption constitutes evidence, and there is no objection to saying that the particular facts proved, i. e., violent death, and the inference therefrom constitute evidence for the consideration of the jury. Many presumptions of law become such because they evolved from inferences of fact supported by human experience and a consideration of the "usual propensities and passions of men." The Oregon decisions speak of a presumption of law as evidence, for it is so defined, but the Oregon rule is satisfied if the inference from facts proved is treated as having probative force. The mere rule of law controlling the procedure of the judge, which is a part of the statutory definition of a presumption, cannot be evidence. The statute cannot make law into evidence, nor can the mind of man weigh law against evidence any more than it can weigh distance against weight or yards against pounds.

We think that the view expressed is consistent with the actual adjudications in Oregon. The situa-

tions in which presumptions of law and inferences are invoked to support a proponent's case may be classified as follows:

(1) Where the proponent offers in evidence facts raising an inference and then rests and where the opponent offers no evidence, the case goes to the jury. The proponent has made a *prima facie* case carrying him past a nonsuit, but the inference is a "deduction which the reason of the jury makes from the facts proved." The result is that the jury may (not must) find for the proponent. Such was the case of *Miller v. Semler,* 137 Or. 610, 2 P. (2d) 233, 3 P. (2d) 987 (1931). The case was submitted to the jury, which found for the plaintiff.

(2) Where the proponent proves facts raising a presumption of law and then rests and where the opponent offers no evidence, the verdict must go for the proponent. The proponent again has made a *prima facie* case carrying him past a nonsuit, but with this difference: here the law expressly directs that a deduction be made from the particular facts. O. C. L. A. 2-403 (supra). We distinguish the presumption of law from a mere inference of fact and hold that the jury must find for the proponent. As said by Mr. Justice ROSSMAN, specially concurring in *Bunnell v. Parelius* (supra), 166 Or. at p. 189, in distinguishing inferences from presumptions of law:

> "The former * * * is a voluntary conclusion; the latter is a compulsory or mandatory conclusion."

Since the jury must in this instance find for the proponent, it is a clear case in which the court must instruct and direct, not because the presumption is

evidence, but because of the procedural statutory rule.

(3) Where the proponent proves basic facts raising a presumption of law and rests and where the opponent offers contradictory but not conclusive evidence, the case will go to the jury whenever there is a rational connection between the basic fact and the inferred fact. In *Coffey v. Northwestern Hospital Association,* 96 Or. 100, 183 P. 762, 189 P. 407 (1920), the proponent offered evidence of the due mailing of notice. The opponent denied receiving it. The court said:

"There is a strong presumption that the letter so marked was received, and whether this presumption was overcome by the evidence of the defendant was a question of fact for the jury."

That presumption (O. C. L. A. 2-407 (24)) is based simply upon experience and logical probability. The likelihood of the receipt of the duly mailed letter is as well known to the jury as to the court. We see no need of instructing them concerning the presumption of law. They might, of course, be advised of their right to infer that the letter was received, but that they already know. See *City Motor Trucking Co. v. Franklin Fire Insurance Co.,* 116 Or. 102, 239 P. 812 (1925); *Stadelman v. Miner,* 83 Or. 348, at p. 378, 155 P. 708, 163 P. 585, 163 P. 983 (1917) (equity case); *Jahn v. Commercial Travelers Mutual Accident Association of America* (supra).

(4) Where the proponent proves facts raising a presumption of law and rests and where the opponent presents contradictory evidence of a conclusive character, the verdict must go for the opponent. The court must direct a verdict, notwithstanding the presumption. The case is identical in principle to the

Bee Hive case discussed *infra.* The force of the presumption of law spent itself when the proponent was carried past a nonsuit. The remaining logical inference, if there was one, is overcome by "proof free from question or contradiction." *French v. State Industrial Accident Commission* (supra). Illustrative of this class is the case of *Kernin v. City of Coquille* (supra).

(5) Where the proponent proves facts raising a presumption of fact (an inference) and rests and where the opponent presents contradictory evidence not, however, "free from question or contradiction" the case must go to the jury. The fact that there is a mere inference favorable to the proponent does not require the court so to instruct, and the inference favorable to the proponent will be weighed against the dubious evidence of the opponent. *Miller v. Service and Sales, Inc.,* 149 Or. 11, 38 P. (2d) 995, 96 A. L. R. 28 (1934) is of this type.

(6) Where the proponent proves facts raising an inference and rests and where the opponent presents convincing evidence free from question or contradiction, the court must direct a verdict for the opponent despite the inference. Here we encounter a series of cases which firmly establish the law as above stated. Most of them are actions against the owner of an automobile for the negligence of the driver. They establish that the proof of ownership of a negligently driven car raises an inference of agency, as distinguished from a presumption of law. The leading case is *Judson v. Bee Hive Auto Service Co.* (supra). The doctrine of that case has been extended and applied in *Lehl v. Hull,* 152 Or. 470, 53 P. (2d) 48, 54 P. (2d) 290 (1936); *Kantola v. Lovell Auto Co.,* 157 Or.

534, 72 P. (2d) 61 (1937); *Brown v. Fields,* 160 Or. 23, 83 P. (2d) 144 (1938); *Bunnell v. Parelius* (supra); *Allum v. Ball,* 168 Or. 577, 124 P. (2d) 533 (1942). In *Brown v. Fields* (supra) though the rule was applied, it was also recognized that

" * * * ordinarily, it is a question for the jury to determine whether the evidence refutes or overcomes the inference of agency which arises by reason of the ownership of the automobile." (Class 5, supra.)

In *Bunch v. Standard Oil Co. of California,* 144 Or. 1, 23 P. (2d) 328 (1933), an inference arose sufficient to create a *prima facie* case of agency, but upon the whole evidence this court held that it was proper for the trial court to direct a verdict for the defendant. The court used this significant language:

"In order to avoid the consummation of an injustice, and when the facts are peculiarly within the knowledge of the opposite party litigant, the courts have relaxed as to the *quantum* of proof required of plaintiff to entitle him to have his case submitted to the jury, in the absence of any evidence on behalf of the defendant."

In *Bunnell v. Parelius* (supra) the decision was unanimous, but specially concurring opinions disclose some disagreement as to the proper basis of the decision. In one the view is expressed that there is an inference of agency which is evidence but that it is of such a weak character that it cannot stand in the face of "facts established by evidence which only an arbitrary judgment would reject." In the other concurring opinion, the view is expressed that there is a legal presumption of agency, not a mere inference. The "majority doctrine" following Wigmore is espoused, and it is argued that the presumption was

not evidence and that it vanishes when it has performed its function of creating a *prima facie* case.

If we should hold in this type of case that the proof of particular facts raises a presumption of law of agency rather than a mere inference of fact, we would not thereby escape the problem which arises when such a presumption, standing alone, is opposed by conclusive evidence free from question or contradiction. If there be any logical inference of agency from proof of ownership of the vehicle (a debated question) that inference would still exist although the law also raised a presumption to the same effect. An inference is founded on a fact legally proved and on such a deduction from the fact as is warranted. O. C. L. A. 2-404. Now, the statute defines an inference as evidence. Assuming, then, that there is a logical inference of agency from ownership, the result would be the same in this class of cases, whether we say there is or is not a presumption of law, for the included inference as defined by statute would be evidence in either case. Inferences of fact, if they exist at all, are evidence, whether standing alone or growing out of proved facts which create a presumption of law, but they may arise to no greater dignity than a scintilla. If they stand alone and are controverted by convincing uncontradicted and unimpeached testimony, they must be deemed evidence but "insufficient evidence."

> "That evidence is deemed satisfactory which ordinarily produces moral certainty or conviction in an unprejudiced mind. Such evidence alone will justify a verdict. Evidence less than this is denominated insufficient evidence." O. C. L. A. 2-111.

(7) Where the proponent offers evidence raising a presumption of fact, that is, an inference, and sup-

ports it with other substantial evidence, and where the opponent then offers substantial contradictory evidence, the case, of course, goes to the jury. *Davis v. Underdahl,* 140 Or. 242, 13 P. (2d) 362 (1932) ; *Fleming v. Ambulance Co.,* 155 Or. 351, 62 P. (2d) 1331, 64 P. (2d) 519 (1937) ; *Ellenberger v. Fremont Land Co.,* 165 Or. 375, 107 P. (2d) 837 (1940). It is not necessary to instruct a jury concerning mere inferences of fact although it may sometimes be permissible.

(8) Where the proponent offers evidence raising a presumption of law and supports it with other substantial evidence, and where the opponent offers substantial contradictory evidence, it is equally clear that the case must go to the jury. It is to this class that the case at bar belongs (assuming that there is a presumption of law against suicide). The only question which arises in this type of case is whether the court has a duty to instruct the jury concerning the presumption of law.

The decision in the case at bar depends upon the principles which we have illustrated. What we have said concerning cases of the Bee Hive type applies with even greater force to presumptions against suicide. In the case at bar, there was a jury question irrespective of any presumption against suicide. If the presumption against suicide, considered as a rule of law, must arbitrarily be given weight as evidence aside from the normal weight of inferences from the facts proved, then it would be the duty of the court to tell the jury so, but if, as we think, a presumption as broadly defined by our statute has a double aspect: (1) a rule of law relative to going forward with the evidence and (2) evidentiary inferences, then it follows that if the rule of law has spent itself and the case

has gone to the jury, there is no need to instruct the jury as to the remaining inferences from facts proved, although the court could, of course, advise them that they may consider love of life and any proper inferences concerning the probability of suicide, along with the other evidence in the case. To summarize: Whenever the particular basic facts necessary to raise a presumption of law have been established by proof (pleadings, stipulations or the like) a presumption of law arises which has procedural aspects which concern the court alone. They relate to nonsuits and the duty of going forward with the evidence. If those basic facts also have a logical value as evidence of the presumed fact, then they and the inferences drawn therefrom constitute evidence for the consideration of the jury, not as rules of law, but as ordinary evidentiary matter. If, as in Oregon, presumptions are so defined as to include not only the procedural or administrative rule of law, but also the inferences from the basic facts, then, to be sure, a presumption as so defined has evidentiary weight, but it does not have evidentiary weight as a rule of law, but only to the extent that the basic facts have logical value as evidence of the presumed fact. When the court has accorded the procedural effect to the presumption, there is no more necessity for instructing the jury as to the remaining logical value of the basic facts and inferences than there is for instructing with respect to any other evidentiary matter.

This is fundamental, for if the basic facts proved which raise a presumption of law have no logical value tending to prove a fact presumed, then the court *cannot* accord evidentiary weight to basic facts and cannot so instruct the jury, statutes to the contrary notwith-

standing. There may be presumptions of an exclusively procedural character adopted by the law to facilitate trials. They carry the proponent past a nonsuit, not because he has proved basic facts which tend to prove his case, but because it is just to require the opponent, who alone may have knowledge of the facts, to go forward with the evidence. *St. Louis-San Francisco Ry. Co. v. Mangum* (supra) is of that type. By an Arkansas statute, railroad companies are made responsible for all damages to persons or property done or caused by the running of trains. Ultimately there must be evidence of negligence, but proof of injury creates a presumption of negligence requiring the railroad company to present some evidence to the contrary.

The court said:

"Under the decisions of the Supreme Court of the United States and our own decisions, when one is shown to have been injured by the operation of a train in this state, it creates a presumption of negligence and the burden is then upon the railroad company to produce some evidence to the contrary. When it does that, however, the presumption is at an end and the question of negligence is one for the jury upon all the evidence; the presumption or inference cannot be considered by the jury as evidence, but it is at an end and the jury must then pass upon the question of negligence from all the evidence introduced.

"To permit the presumption to be considered as evidence after other evidence has been introduced, would, as stated by the Supreme Court of the United States, be unreasonable and arbitrary, and would violate the due process clause of the 14th amendment, U. S. C. A. Const." *St. Louis-San Francisco Ry. Co. v. Mangum* (supra) 199 Ark. 797, 136 S. W. (2d) at p. 160.

The unanimous opinion of the United States Supreme Court in *Western & Atlantic Railroaod v. Henderson,* 279 U. S. 639, 73 L. Ed. 884, 49 S. Ct. 445, is to the same effect. A Georgia statute provided that

" * * * a railroad company shall be liable for any damages done * * * by the running of the locomotives * * * unless the company shall make it appear that their agents have exercised * * * reasonable care * * * the presumption in all cases being against the company."

The United States Supreme Court said that as construed by the state supreme court, the statute "creates an inference that is given effect of evidence to be weighed against opposing testimony" and held that the statute creating the presumption violates the due process clause of the 14th amendment. The court said:

"Legislation declaring that proof of one fact or group of facts shall constitute prima facie evidence of an ultimate fact in issue is valid if there is a rational connection between what is proved and what is to be inferred. A prima facie presumption casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to which the presumption relates. A statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it violates the due process clause of the 14th amendment. Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty or property. Manley v. Georgia, 279 U. S. 1, ante, 575, 49 Sup. Ct. Rep. 215, and cases cited.

"The mere fact of collision between a railway train and a vehicle at a highway grade crossing furnishes no basis for any inference as to whether the accident was caused by negligence of the railway company or of the traveler on the highway

or of both or without fault of anyone. Reasoning does not lead from the occurrence back to its cause.''

The doctrine is approved in *Bandini Petroleum Co. v. Superior Court of the State of California,* 284 U. S. 8, 52 S. Ct. 103, 76 L. Ed. 136, 78 A. L. R. 826, and see American Law Institute, Model Code of Evidence, Foreword by Edward M. Morgan, p. 60. Thus, it appears that our statute cannot give evidentiary value to a presumption unless there is a ''rational connection between what is proved and what is to be inferred'', i. e., between the basic facts and the inferred facts. Whenever there is such a rational connection it exists not because the statute created it but because it inheres in the nature of the evidence. That rational connection, when it exists, constitutes an inference, and it is for the jury like all other inferences (except when standing alone it is overwhelmed by conclusive contradictory evidence, as in the Bee Hive case, supra).

In adopting the majority view of presumptions as thus set forth, we do no violence to our statute. We deprive no one of the probative force of the presumption, if it has any, and if it has no probative force, we do but apply a rule supported by the due process clause when we decline to treat the presumptions as evidence. The conclusion to which we are forced is that presumptions of law arising from proof of particular basic facts having probative force need not be stated to the jury. We fully realize that the word ''presumption'' is one in common usage, which probably does not connote any rule of law to the common man. In its common use it means ''ground for presuming or believing probable.'' It is most frequently used as meaning ''inference.'' We cannot say that the fre-

quent loose use of the term in instructions is always error or, if so, reversible, but as to the type of instruction now under discussion, we do say that it was not error to refuse to instruct concerning a presumption of law and that to instruct the jury that such a presumption of law is evidence would be erroneous, because such an instruction would tend to confuse the logical inferences from basic facts which the jury are at liberty to consider with a rule of law with which they are not concerned and which, as a rule of law, can have no evidentiary weight.

Again, it might be thought that our rule of law does violence to O. C. L. A. 2-405 (supra) which provides that disputable presumptions may be overcome by evidence, but unless so overcome are controlling. It is true that presumptions of law are controlling unless overcome by evidence, but the statute does not designate the quantum of evidence necessary to overcome a presumption of law. It may well be said that a presumption of law, as a rule of law, is overcome when substantial evidence to the contrary is introduced. This view has the support of the United States Supreme Court in *New York Life Insurance Co. v. Gamer* (supra). That court discusses the much misunderstood case of *Travelers Insurance Co. v. McConkey,* 127 U. S. 661, 32 L. Ed. 308, 8 S. Ct. 1360. Speaking of that opinion the court said:

"It held that if the insured committed suicide, plaintiff had no claim; that, from the fact of death by violence, accident would be presumed, and that unless the presumption was overcome by evidence the law was for plaintiff. The opinion does not indicate the quantum of proof required to put an end to the presumption. It is consistent with, if indeed it does not support, the rule that the pre-

sumption is not evidence and ceases upon the introduction of substantial proof to the contrary." (Citing many cases.) *New York Life Insurance Co. v. Gamer* (supra) 114 A. L. R. at p. 1222.

Two states, Montana and California, have enacted statutes identical to those of Oregon concerning presumptions. 4 Revised Codes of Montana, 1935, §§ 10,600 to 10,606; California Code of Civil Procedure, 1941, §§ 1957 to 1963 and 2061. The decisions in both states reflect the same confusion which has prevailed here. The courts of both states have adhered to the view that disputable presumptions are evidence to be weighed against other evidence and have even indicated that such presumptions as those of due care and innocence which do not arise from proof of any basic facts are also to be weighed as evidence, notwithstanding the general rule to the contrary. 34 A. L. R. 942. *Gagnon v. Jones,* 103 Mont. 365, 62 P. (2d) 683 (1936); *Smellie v. Southern Pacific Co.,* 212 Cal. 540, 299 P. 529 (1931). Yet the Montana court also speaks of a presumption of law thus: that it fades away in the face of contrary facts, and cites 5 Wigmore on Evidence, 2nd Ed. § 2493 in support. *Johnson v. Kaiser,* 104 Mont. 261, 65 P. (2d) 1179 (1937). A recent well considered case from the Supreme Court of California has greatly weakened the doctrine of the Smellie case (supra) and has taken a long step toward the adoption of the rule which we have set forth in the case at bar. In *Speck v. Sarver,* 20 Cal. (2d) 585, 128 P. (2d) 16 (1942), the trial court instructed the jury in an automobile negligence case that there is a presumption of law that plaintiff was not guilty of contributory negligence, which presumption "is, in itself, a species of evidence." Upon appeal the Supreme Court said that an instruction as to the

existence of the presumption may properly be given to the jury in certain situations, but the court added:

> "Such an instruction, however, should not be given where the evidence introduced by the plaintiff discloses the acts and conduct of the injured party immediately prior to or at the time in question."

It was held that the instruction given constituted error. This recent decision is wholly inconsistent with any rule that a presumption is evidence, for if a presumption of law is evidence having probative force as such, it must remain so regardless of the introduction of other evidence on the same issue. Three judges concurred in the conclusion that the giving of the instruction was erroneous but was not prejudicial. Chief Justice Gibson concurred

> " * * * for the reason that the rules as to the nature of rebuttable presumptions upon which the foregoing opinion is based have been fixed by many decisions of this court, and any modifications of such rules should be effected by the Legislature, and not by overruling at this time the cases establishing them."

Justice Traynor, with whom Justice Edmonds concurred, wrote a scholarly and convincing dissent, which strongly supports our conclusions in the case at bar. The dissenting opinion examines the California statutes (identical to our own) in detail and demonstrates, we think, that there is nothing in the statutes which requires that presumptions of law as such should be given evidentiary weight (though logical inferences from basic facts proved do, of course, have such weight). From the dissent, all of which merits consideration, we quote the following excerpts:

> "The rule that rebuttable presumptions may be weighed as evidence is so arbitrary, and its con-

sequences so mischievous that it becomes imperative to set forth to what lengths it has departed from the function and purposes of such presumptions.''

''It is pure ritualism that a precedent should gather as much respect from a long life of inconsistency as it would from a long life of certainty, and earn the right to survive merely because it has survived so long. One looks to precedent for certainty, the substance of its vitality. If instead it offers only confusion it loses its right to endure indefinitely. The confusion in the California cases as to the function of rebuttable presumptions can be eliminated only by repudiating the erroneous view that such presumptions may be weighed as evidence. Smellie v. Southern Pacific Co., supra, and the cases following it should be overruled.

''In the field of evidence and procedure everything is gained and little lost by overruling an irrational precedent. Nothing is taken away, as it might be in the substantive law of property and contracts, upon which one is entitled to rely. Certainly the parties in an automobile accident cannot reasonably contend that they operate their vehicles in reliance on the rule in the Smellie case. That rule was a judge-made rule and should be laid at rest where it originated. It would be most inappropriate to shift the responsibility for its demise to the Legislature, for it involves not questions of policy, but technical questions of procedure that are peculiarly within the province of the courts.''

*Lewis v. New York Life Insurance Co*, 113 Mont. 151, 124 P. (2d) 579 (1942) is a case similar to the case at bar. It arose under Montana statutes similar to our own. The trial court instructed the jury that there was a presumption of accidental death, employing language found in an instruction approved in *Travelers Insurance Co. v. McConkey* (supra) which

was criticised in the later case of *New York Life Insurance Co. v. Gamer* (supra). The jury was instructed in part as follows: A presumption

" * * * may be controverted by other evidence, direct or indirect, but unless so controverted by a preponderance of the evidence the jury is bound to find according to the presumption."

Such an instruction would certainly be disapproved in this court because of its tendency to indicate that the burden of proof is on the defendant to prove suicide. The Montana court, however, held that the instruction was not erroneous, relying on the McConkey case. Here, again, we find a strong and persuasive dissent which gives consideration to the relevant statutes and cites the Wigmore doctrine with approval. In view of the complete change in Vermont and the strong dissent in California and Montana, we think the trend is decidedly toward the view expressed here and that it was unnecessary to give the requested instruction concerning a presumption against suicide.

In *Jefferson Standard Life Insurance Co. v. Clemmer* (supra) 79 F. (2d) at p. 730, 731, the court said:

"Certainly the presumption is not based upon any difficulty of producing the evidence or the essential accessibility of the evidence to one of the parties, or upon the judgment of the courts as to what is socially desirable. Obviously, the presumption is not needed in order that justice may be done to the beneficiaries or the representatives of the deceased, for jurors do not need to be told that suicide is abnormal, or warned to be fair to the plaintiff on a suit on a life insurance policy.

"Ordinarily, it is not necessary to refer to the presumption against suicide in the charge to the jury. If the basic fact of death by violence is ad-

mitted, or proved, the presumption arises, and in the absence of countervailing evidence, the judge should direct a verdict for the plaintiff. If such evidence is produced, the judge should charge the jury in the usual fashion. He may of course refer in his discretion to the improbability of suicide as an inference of fact, based on the common experience of mankind, but the jury should be permitted to give the inference such weight as it deems best, undisturbed by the thought that the inference has some sort of *artificial probative force which must influence their deliberations.*" (Italics ours.)

In the case of *Wojcik v. Metropolitan Life Insurance Co.* (supra) 1 A. (2d) at p. 133, the court said:

"The burden to prove that the death was by accidental means was upon the plaintiff and she was not entitled to have any presumption against suicide considered in determining that issue as the case was tried, though the 'nonprobability of death by suicide' was a consideration to be weighed by the trial court with the other circumstances in evidence in arriving at its decision."

In the case of *Rast v. Mutual Life Insurance Co. of New York,* 112 F. (2d) 769 (1940), the court said:

"Nor was it error in our opinion to refuse to charge the jury that the presumption against suicide has the weight of evidence. It is true that the Supreme Court of South Carolina has spoken of the presumption against suicide as sufficient to carry a case to the jury * * * but this is only another way of saying that when an unexplained death by violence is established, the legal inference is that the death was caused by accident rather than by suicide."

In *Jahn v. Commercial Travelers Mutual Accident Association of America,* 256 App. Div. 835, 9 N. Y. S. (2d) 257 (1939), after holding that proof of death by

violent and external means makes out a *prima facie* case of accidental death, the court said:

"They, however, should also have been charged that when the defendant adduced proof which indicated that the decedents death was due to suicide, the jury should then, from all the evidence which it credited, decide without regard to any presumption, whether the insured had died as a consequence of accident or as a consequence of suicide, and that on the whole case, the burden of proof to establish that the death was due to accidental means was upon the plaintiff."

In *Honrath v. New York Life Insurance Co.* (supra), there was evidence upon both sides on the issue of accident as against suicide. The court said:

"In view of the record as above disclosed, we believe, it was error for the trial judge to instruct the jury in this case regarding the presumption against suicide."

\* \* \*

"The presumption, when the opposite party has produced prima facie evidence, has spent its force and served its purpose, and the party then, in whose favor the presumption operated, must meet his opponent's prima facie evidence with evidence, and not presumptions. A presumption is not evidence of a fact, but purely a conclusion."

In *Buro v. Home Benefit Association (Texas)* 28 S. W. (2d) 902 at p. 905 (1930), the court said:

"Appellant contends that the trial court should have specifically charged the jury that there is a presumption of law against a person committing suicide. We do not agree with this contention. Our courts uniformly hold that the trial judge should not charge on the weight of the evidence, neither should he charge upon legal presumptions unless the same are expressly defined by statute."

In *Jennings v. Soverign Camp. W. O. W.* (Texas) 296 S. W. 961 (1927), the court said:

"Whether or not a man committed suicide is a fact question, and must be proved by preponderance of the testimony just as any other fact. Since the jury in this case has found that the deceased met his death by suicide their finding cannot be disturbed by this court unless it was against the great weight and preponderance of the testimony."

\* \* \*

"We deem it best to state that it is improper for the trial court to charge on legal presumptions unless the same are expressly defined by statute." (Citing cases.)

In the case of *First National Bank v. Commercial Assurance Co.*, 33 Or. 43, 52 P. 1052 (1898), the court had under consideration the presumption of innocence, but the statement of WOLVERTON, J., is highly persuasive.

"Presumptions of fact are the natural presumptions which rest upon experience and observation of the course of nature, the constitution of the human mind, the springs of human action and the usage and habits of society. The presumptions of law, many of them, rest upon the same ground which the law simply recognizes and enforces. Many of them, however, are only partially approved by reason, and the law from motives of policy attaches to the facts which give to it an artificial effect beyond their natural tendency to produce belief: Best, Ev. (A. ed.) §§ 303, 305. Just so far as the presumption or maxim, as it may be termed where it does not proceed from proof, is founded upon reason and the experience of human kind, it has evidentiary value; and, in the determination of such value, the artificial effect given it by the edict of law must be eliminated,—that is to say, strike off the edict,

and what is left will constitute a natural presumption, or one of fact, and this will be the measure of its evidentiary value."

In *Modern Woodmen of America v. Craiger* (supra) 92 N. E. at pp. 114, 115, the court said:

"In determining the charge of suicide, the jury may properly consider the facts and circumstances bearing upon that question given in evidence in the light of their common knowledge and experience that mankind instinctively love life and generally shun death, although occasionally men, both sane and insane, take their own lives. The cause of death was directly in issue in this case to be decided not by a presumption of law, but as an inference of fact by the jury in the same manner as other facts are determined in civil actions." * * *

"When the question of suicide is put in issue, as in this case, it devolves upon the party affirming such fact to establish the same; and this issue may be proved like any other fact in a civil action by a preponderance of the evidence given touching that question. If such evidence is equally balanced, the party having the burden must fail, not because of the presumption of law against suicide, but because he has not sustained his affirmative defense." (Citing many cases.)

The foregoing was said in a case in which suicide was pleaded as an affirmative defense.

In *Domanowski v. Prudential Insurance Co. of America*, 116 N. J. L. 247, 182 A. 906 (1936), action was brought on a double indemnity policy for accidental death. Verdict was in favor of the defendant company. Upon appeal it was urged that the trial court had committed reversible error in refusing to instruct the jury as follows:

"The plaintiff, Stella Domanowski, is entitled to the benefit of the presumption that the death of

the Insured was not caused by self destruction or suicide."

\* \* \*

"Where a person is found dead the presumptions are that death was natural or accidental, and suicide will not be presumed."

Speaking of the requested instructions above quoted, and of one other which need not be noticed, the Court of Errors and Appeals said:

"The vice in these three requests is that they seek to substitute a presumption for evidence. The aid of a presumption may be invoked only to establish a prima facie case to entitle the party carrying the burden of proof to go to the jury or to require his opponent to go forward with the evidence. A presumption is applied by the court in a proper case to make that quantum of proof that, without which, the court would be obliged to nonsuit or direct a verdict. These requests are not amplified to instruct the jury that a presumption is not evidence and cannot be treated as evidence by the jury in reaching a verdict. These requests were properly refused. Kresse v. Metropolitan Life Ins. Co., 111 N. J. Law, 474, 168 A. 634."

In *Walters v. Western & Southern Life Insurance Co.*, 318 Pa. 382, 178 A. 499 (1935), the trial court instructed the jury in substance that there was a presumption against suicide. Upon appeal it was held that the court had not committed reversible error, but the Supreme Court of Pennsylvania said:

"In deciding not to reverse the judgment of the court below, we are not sanctioning the use of the word 'presumption' as it was used by the court in its charge or as used in the excerpt cited above from the opinion of the superior court. The trial judge should have made it clear that in weighing the

evidence in this case the jury had a right to consider the nonprobability of death by suicide, but that this nonprobability could not take the place of the evidence required to be furnished by plaintiff in order to prove her case."

See also *O'Dea v. Amodeo* (supra); *Del Vecchio v. Bowers* (supra); *Watkins v. Prudential Insurance Co.* (supra); *Firszt v. Capitol Park Realty Co.,* 98 Conn. 627 at p. 645, 120 A. 300 (1923); *Sackberger v. National Grand Lodge,* 73 Mo. App. 38 (1898), and see *New York Life Insurance Co. v. Ross* (supra) in which the court criticised as erroneous an instruction on the presumption against suicide. The case of *Warbende v. Prudential Insurance Co. of America* (supra) goes somewhat beyond the case last cited. It holds that there is no general presumption of law that death is accidental, but it recognized the existence of an inference to that effect and therefore properly held that there was sufficient evidence to go to the jury. See also 103 A. L. R. 185, where the annotator has collected cases both supporting and opposing the doctrine of the above cited cases.

We have concluded that there was no error in refusing to instruct as requested concerning presumptions against suicide. We again call attention to the fact that our reasoning and decision is limited to the case of a presumption in which the conclusion is essentially a reasonable deduction from facts proved. There are disputable presumptions of law which, by statutory mandate, go entirely beyond a mere assertion of probable consequences from facts proved, presumptions not based on experience or probability but upon public policy or necessity. There is a presumption of law that a person not heard from in seven years is dead.

There may be a reasonable inference which would arise merely from long unexplained absence to the effect that a person is dead, but the statutory mandate which fixes seven years rather than six, eight or twenty as the point at which a presumption of death arises, is not based on experience or probability. The seven year provision is an arbitrary rule based on necessity. The conclusion at which we have arrived in this case does not necessarily apply to such a presumption. Both the history and nature of the presumption of death from seven years' absence indicate that it partakes somewhat of a rule of substantive law. The presumption concerning survivorship when two persons perish in the same calamity is of a similar nature. There will be time enough to classify other legal presumptions when they arise and appear in their specific context. The ruling here relates to the alleged presumption against suicide.

The case under consideration is also to be distinguished from such presumptions as ''that a person is innocent of crime or wrong.'' O. C. L. A. 2-407 (1). That presumption cannot be brought within the statutory definition. It is not a deduction which the law expressly directs to be made from particular facts. He who relies upon it need prove nothing, for it arises without proof of any particular facts. It is not based on probability or necessity but upon broad considerations of public policy. It is not improper to instruct the jury on the presumption of innocence, but that presumption in its inherent nature is not evidence and is not made so by statute. It is a rule which properly serves to advise the jury that the burden of proof of crime or wrong is always on the party asserting it and that they must disabuse their minds from any prejudice

arising from the fact that a charge has been made or an indictment returned. It conveys the idea that the cards are not stacked against accused persons and that they enter upon a trial surrounded by all the rights of free men. It is true that our statute provides that indirect evidence is of two kinds: (1) inferences, and (2) presumptions, but that is not the equivalent of saying that *every* presumption is evidence.

In *Cox v. Royal Tribe* (supra) the trial court instructed the jury that there was a presumption of law against suicide. No exception was taken to that portion of the instruction which referred to a "presumption of law." An examination of the bill of exceptions discloses that the only exception was as follows:

> "Whereupon counsel * * * duly excepted to the following sentence in the first instruction requested by plaintiff and given by the court, to-wit: 'And plaintiff is therefore entitled to recover unless the evidence introduced has overcome this presumption and satisfied you that death was voluntary.'"

This court said:

> "There is a presumption that death is the result of natural causes, which inures to the benefit of the plaintiff, and should, *as the first step,* be satisfactorily overcome before the defendant could have a verdict." (Italics ours.)

The action in the Cox case was upon an ordinary life insurance policy, and the burden of proof was on the defendant company to establish suicide as an affirmative defense by a preponderance of the evidence. Unlike the case at bar, the presumption was employed defensively by the plaintiff. The trial court in its instruction said:

> "* * * and in this case, if there was no proof as to the cause or manner of death of Mrs. Cox, or

if the evidence as to whether her death was caused by accident or natural causes, and not by her own hands, was evenly balanced, you would find in favor of this presumption.''

It is observed that both the trial and appellate courts were chiefly concerned with the burden of proof, and the jury was properly advised that if the evidence was evenly balanced the verdict should be for the plaintiff, since the defendant had asserted the affirmative defense of suicide. It is a very different matter when, as here, the plaintiff has the burden of proof of accidental death and requests an instruction which says to the jury in substance, ''The plaintiff has the burden of proof of death by accident, but we now instruct you that, by reason of a presumption, his claim is probably true.'' In the Cox case, the appellant in its brief conceded that there was a presumption of law against suicide. The exceptions were based upon the claim that the presumption was improperly stated. In the court's discussion of the propriety of instructing on the presumption, it is difficult to tell whether it considered the presumption as a reasonable inference from facts proved or as a rule of law. It certainly did not say that the presumption as a rule of law was evidence. The holding of the case was that it was proper to instruct on the presumption. We think that the instruction as given amounted to little more than a statement concerning the burden of proof. In view of the multitude of recent decisions and texts which have appeared since the date of the Cox case, we think it must not be considered an authority for the proposition that it is prejudicial error to refuse to instruct that there is a presumption of law against suicide. A holding that it was not error to give the instruction which appears in

that case is very different from a holding that it would be prejudicial error to refuse to give the request in the case at bar.

Reference may be made to the provisions of O. C. L. A. 2-204 to the effect that every witness is presumed to speak the truth. It is, of course, entirely proper so to instruct the jury in any case. The presumption that a witness speaks the truth is not one which arises from the proof of particular facts, but, like the presumption of innocence, it merely asserts that a witness in the first instance stands before the court as an honest man. There is nothing in that section of the statute which implies that such a presumption is evidence, nor do the courts so instruct. In fact, the presumption that a witness speaks the truth may be overcome without any contradictory evidence whatever. It may be overcome merely "by the manner in which he testifies" or "by the character of his testimony." O. C. L. A. 2-204.

We have indicated that the difference between the view here taken and the view that presumptions of law as such are evidence is largely one of terminology. In appellant's brief on rehearing the following Oregon cases are cited as supporting the view that a presumption is evidence: *Bunnell v. Parelius* (supra) (specially concurring opinion of Justice Lusk; *Hansen v. Oregon-Washington Railroad & Navigation Co.* (supra); *Caraduc v. Schanen-Blair* (supra); *Clark v. Shea* (supra); *City Motor Co. v. Franklin Fire Insurance Co.* (supra); *Sather v. Giaconi* (supra); *Dougherty v. Hazelwood Co.* (supra); *Peabody v. O. R. & N. Co.*, 21 Or. 121, 26 P. 1053, 12 L. R. A. 823 (1891). It is significant that in every one of those cases the facts proved which are relied upon as raising a presumption

were facts having probative value and a rational connection with the ultimate fact presumed or inferred. It follows that upon either view of the nature of a presumption, there was evidence in each of the cases which would normally be for the jury. In the same brief the following Oregon cases were cited as holding that the court should instruct as to the existence of presumptions: *Cox v. Royal Tribe* (supra); *First National Bank of Portland v. Commercial Assurance Co.,* 33 Or. 43, 52 P. 1052 (1898); *Peabody v. O. R. & N.* (supra); *Kern v. Pullen,* 138 Or. 222, 6 P. (2d) 224, 82 A. L. R. 434 (1931). The Cox case we have already discussed. *First National Bank of Portland v. Commercial Union Assurance Co.* holds that the court should instruct on the presumption of innocence. We agree. Nothing is said in the Peabody case concerning the duty of the court to instruct the jury. *Kern v. Pullen* relates to the provision of O. C. L. A. 2-1001 which provides that the jury are to be instructed

"* * * on all proper occasions * * * that they are not bound to find in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds * * * against a presumption * * *."

That case held that the trial of every case is a " 'proper occasion' to give statutory instructions." Upon this point it was expressly overruled by *Fitze v. American-Hawaiian Steamship Company,* 167 Or. 439, 117 P. (2d) 825 (1941). We held that such an instruction is not required on all occasions but only on "proper occasions." Whenever a presumption is mentioned to the jury it will be a proper occasion to instruct them as provided in the section quoted above. Since the presumption of

innocence and the rule that every witness is presumed to speak the truth applies in substantially all the cases, it may be assumed that all such cases are proper occasions for the statutory instruction. O. C. L. A. 2-1001 (2). Furthermore, most presumptions of law do include reasonable inferences of fact based on the probative value of the basic facts proved, and in such cases it is perfectly true that the jury, as stated in the statute, is not bound to find in conformity with the declarations of witnesses against such a presumption (unless, of course, the evidence is conclusive against a lone presumption).

Nothing we have said in any way limits or narrows the duty existing under the Fitze case (supra) to give the statutory instructions specified in O. C. L. A. 2-1001 on all proper occasions.

It may be urged that this opinion leaves the trial courts without guidance as to the proper procedure when a case involving presumptions of law goes to the jury. The first answer is that their difficulties are no greater than those of all the courts in the great majority of jurisdictions where the rule that a presumption of law as such is not evidence, now prevails. Furthermore, the existence of a presumption of law may be of aid to the jury even though not instructed concerning it as a rule of law.

The provision of O. C. L. A. 5-308, to the effect that in charging the jury the court "shall not present the facts of the case" has been held to restrain the court from commenting on the evidence, and under some decisions even a statement to the effect that the jury are at liberty to draw certain inferences from facts proved has been thought to invade the province of the jury.

When, however, there is a presumption of law which warrants a deduction from facts proved, it is certainly within the power of the court to instruct the jury that they are at liberty to draw the appropriate inference if the basic facts which give rise to the presumption and the deduction are proved. In view of the presumption of law against suicide, it would be permissible to refer to the improbability of suicide as an inference of fact based on the love of life and the common experience of mankind. *Jefferson Standard Life Insurance Co. v. Clemmer* (supra); *Kresse v. Metropolitan Life Ins. Co.*, 111 N. J. Law 474, 168 A. 634. Upon proof of the due mailing of a letter the jury might be instructed that they may draw an inference of its due receipt.

In *Peterson v. Grayce Oil Co.* (Texas) 37 S. W. (2d) 367 at p. 376 (1931) the court said:

> "It was also error for the court to tell the jury in the same definition that 'malice' may be inferred from circumstances which show a reckless disregard of the rights of another, or a reckless disregard of consequences to another. *In the absence of some statute prescribing that such an inference may be drawn,* it was exclusively within the province of the jury to determine whether or not it was warranted; and the instruction so given was upon the weight of the evidence." (Italics ours.)

An instruction as to the appropriate inference which may be drawn from facts proved effectuates the only legitimate function of a legal presumption so far as the jury is concerned, and it contains no more comment on the evidence than the statute which creates the presumption warrants. Thus, the jury will learn of their right to give full evidentiary effect to basic facts and inferences therefrom, but will not be confused by

an incomprehensible instruction that a presumption as such, i. e., as a rule of law, is evidence.

Based upon the foregoing considerations, the minority of the court have arrived at the conclusion that no error was committed by the trial judge in refusing to give the requested instructions and that the view here expressed does no violence to the Oregon statutes. It is a matter of satisfaction, from the standpoint of sound procedure and principle, that our views are supported by provisions of the Model Code of Evidence of the American Law Institute which read as follows:

"RULE 704. EFFECT OF PRESUMPTIONS.

"(1) Subject to Rule 703, when the basic fact of a presumption has been established in an action, the existence of the presumed fact must be assumed unless and until evidence has been introduced which would support a finding of its non-existence or the basic fact of an inconsistent presumption has been established.

"(2) Subject to Rule 703, when the basic fact of a presumption has been established in an action and evidence has been introduced which would support a finding of the non-existence of the presumed fact or the basic fact of an inconsistent presumption has been established, the existence or non-existence of the presumed fact is to be determined exactly as if no presumption had ever been applicable in the action.

"Comment on paragraph (1):

"This states the view of practically all text-writers, and is universally applied by the courts when they are using the word 'presumption' carefully and not as a mere synonym of 'inference.' "

\* \* \*

"*b. Application and reasons.* A presumption, to be an efficient legal tool, must (1) be left in the

hands of the judge to administer, and not be submitted to a jury for decision of the question when it is 'rebutted' or ceases to have compelling force; (2) be so administered that the jury never hear the word presumption used since it carries unpredictable connotations to different minds; and (3) be embodied in a rule easy of application by the judge in the hurry of trial. This Rule meets these tests. * * *''

As a guide to the trial judges, if the foregoing principles should be adopted, the Model Code provides as follows:

"Except in situations where, regardless of rules governing presumptions, a mandatory instruction would be required, the application of this Rule at a trial is as follows:

"I. If the basic fact has not sufficient value as evidence of the presumed fact to support a finding and there is no other evidence that the presumed fact exists—

"A. When the basic fact is established without decision by the jury, then,

"(1) if there is no evidence justifying a finding contrary to the presumed fact, the judge instructs the jury that the presumed fact must be taken as true; but

"(2) if there is evidence justifying a finding contrary to the presumed fact, the judge instructs the jury that the presumed fact does not exist.

"B. When the basic fact has to be established by the jury upon evidence, then

"(1) if there is no evidence justifying a finding contrary to the presumed fact, the judge instructs the jury that if they find

the basic fact, the presumed fact must be taken as true;

"(2) if there is evidence justifying a finding contrary to the presumed fact, the judge instructs the jury that the presumed fact does not exist.

"II. If the basic fact has sufficient value as evidence of the presumed fact to support a finding, the procedure is as follows whether there is or is not other evidence that the presumed fact exists—

"A. When the basic fact is established without decision by the jury, then,

"(1) if there is no evidence justifying a finding contrary to the presumed fact, the judge instructs the jury that the presumed fact must be taken as true; but

"(2) if there is evidence justifying a finding contrary to the presumed fact, the judge says nothing about a presumption, but leaves the jury to find the existence or non-existence of the presumed fact upon all the evidence exactly as if the presumption had never had any effect in the action.

"B. When the basic fact has to be established by the jury, upon evidence, then,

"(1) if there is no evidence justifying a finding contrary to the presumed fact, the judge instructs the jury that if the basic fact is established, then the presumed fact must be taken as true; but

"(2) if there is evidence justifying a finding contrary to the presumed fact, the judge says nothing about a presumption, but leaves the jury to find the existence or non-existence of the presumed fact exactly as if the presumption had never had any effect in the action."

Being of the opinion that no error was committed by the trial judge, the writer dissents.

Mr. Justice HAY joins in this dissent.

---

ROSSMAN, J. (specially concurring in Mr. Justice BRAND's opinion, but dissenting in part.

I concur in the opinion written by Mr. Justice BRAND, with the exception of those parts which are preceded by numerals and which state rules for the guidance of future cases.